# CASES DECIDED

## BY THE

# SUPREME COURT

## OF THE

## TERRITORY OF HAWAII.

---

## ROBERT M. FULLER *v.* HONOLULU RAPID TRANSIT and LAND COMPANY.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED JUNE 21, 1904.          DECIDED JULY 11, 1904.

FREAR, C.J., HARTWELL AND HATCH, JJ.

JUDICIAL NOTICE—*street railway act of public nature.*

> The court takes judicial notice of Chapter 69 of the Act of 1898, authorizing a street railway in Honolulu, but if this were not so the defendant's admission that it was a corporation organized under the Act would dispense with proof of the Act.

RIGHT OF WAY—*due care required in its exercise.*

> The right of way mentioned in Section 11 of the Act does not require that persons lawfully using the highway shall not pass in front of the defendant's cars under any circumstances, nor authorize

defendant's cars to cross intersecting streets at times and under circumstances endangering the lives or property of persons attempting to cross in front of the cars. The defendant corporation's duty requires it to exercise due and proper care to avoid injury to other persons.

CONTRIBUTORY NEGLIGENCE PER SE—*not in walking along stepping board of car.*

It is not contributory negligence on the part of the plaintiff to step upon the outer platform of defendant's car while stopping for passengers and to walk forward on the standing board to find room to sit in the car, it appearing that the car was full.

NEGLIGENCE—*verdict cannot be set aside if negligence reasonably inferred from evidence.*

The evidence in the case is not such as to permit of but one reasonable inference concerning the defendant's negligence; consequently a decision by the court, jury waived, in favor of the plaintiff cannot be set aside on the ground that there was no evidence on which defendant's negligence might reasonably be inferred.

PHYSICAL EXAMINATION—*must be applied for before trial, if right exists at all.*

Whether in a case like the present a defendant is entitled to obtain physical examination of the plaintiff is not required to be determined in this case, since if such right exists in any case the examination ought to be applied for before entering upon the trial.

### OPINION OF THE COURT BY HARTWELL, J.

The plaintiff averred in his declaration that while a passenger on the defendant's electric street railway car on February 22, 1902, a collision, owing to the defendant's negligence, occurred at the crossing of Nuuanu and Hotel streets in Honolulu, between the said car and a car and team of the Hawaiian Tramways Company, by reason of which collision the plaintiff, without fault or negligence on his part, was caught and crushed between the defendant's car and the tramway's car and team and received serious and dangerous injuries and was greatly bruised, hurt and wounded and so remained for a long time, and has ever since suffered great pain and injury and mental anxiety, and been unable to transact business.

Jury was waived by the parties and the cause was tried by

Robinson, J., of the First Circuit Court, who decided in favor of the plaintiff, awarding him $2250 damages. At the close of the plaintiff's case the defendant moved for a non-suit on the ground that the driver of the tramcar was shown by the evidence to have seen defendant's car, "at the crossing and about to cross the street ahead of himself and in spite of that fact started up and attempted to cross irrespective of the law that gives to the Rapid Transit Co. the right of way," (referring to Section 11, Chap. 69, Acts of 1898), and claiming that the evidence showed "that the position of the two cars was such that the tramcar was bound to wait until the Rapid Transit car had passed". The court while inclining to the opinion that there having been no proof of the Act it was not bound to take judicial notice of it, ruled that "whether this was so or not the Act simply gave the Rapid Transit Co. a right of way in the event that two cars should endeavor to cross at the same time, so that if both started at the same time from points equally distant it would have been the duty of the driver of the tramcar to stop so as to permit the passage of the Rapid Transit car". The court, however, held that the testimony showed "that the driver of the tramcar had actually started to cross the street before the two-bell signal had been given for starting the Rapid Transit car and for that reason, as well as because there was testimony that the motorman was not looking toward the direction from which the tramcar was coming", denied the motion, the defendant excepting to the denial. The defendant's admission at the opening of the case that it was "a corporation authorized to carry out the provisions of the franchise conveyed by the Act 69 of the Laws of 1898" dispensed with proof of the Act. But apart from this admission judicial notice may be taken of the Act. As a common carrier of passengers the defendant corporation is of a *quasi* public nature; the Act under which it was incorporated "applies to and affects all persons, i. e., the public and not merely certain persons or classes of persons or interests." Section 502, Endlich, Interp. Sts. We are unable, however, to accept the defendant's

view of the construction of Sec. 11 of this Act, which reads as follows:

"The cars lawfully occupying and using said railway shall be entitled to and have the right of way upon the tracks by this Act authorized to occupy streets, roads and places, as herein mentioned, except that in case of fire such right shall yield to the fire engines during the continuance of such fire in Honolulu, and to the Honolulu police authorities in case of emergency."

The right of way referred to in the above section does not require that other persons lawfully using the highway shall not pass in front of a Rapid Transit car under any circumstances; nor does the Act authorize the cars of the defendant corporation to cross intersecting streets at times and under circumstances endangering the lives or property of persons crossing or attempting to cross in front of the cars. It is the duty of the defendant corporation to exercise due and proper care to avoid causing injury to other persons. Whether a person in attempting to cross in front of an electric car used proper care, or took upon himself unnecessary risks amounting to contributory negligence, is a question not arising in passing upon this exception.

The transcript of the record shows that there was evidence on which the jury, or court sitting in place of a jury, could properly have found that the driver of the tramcar had started to cross the street before the Rapid Transit car had started, and also that the motorman was not looking in the direction from which the tramcar was coming. Mrs. Sharratt testified for the plaintiff (pp. 38, 39, transcript of evidence) that she was a passenger on the tramcar coming down Nuuanu street at the time of the accident; that the tramcar stopped toward Hotel street before it got to the crossing, when some passengers got off, that at about that time she saw an electric car of the Rapid Transit Co. "standing on the Waikiki side of Hotel street; the car was standing there before we stopped. The motorman of the Rapid Transit car was not looking; after the tramcar had already started they started and he had not seen it and by the time he saw it coming it was too close and the tramcar driver had just time to turn the mules,

and the whiffletree or pole thumped against it," (the Rapid Transit car). This witness also testified (page 44) "that three passengers on the tramcar got off from the car near Hotel street". The driver of the tramcar, Costa, a witness for the plaintiff, identified on cross-examination a written report made by him to his company, which report was produced and filed by defendant and which reads as follows: "As I was coming down Nuuanu street driving car No. 16, I saw on the left hand side of Nuuanu and Hotel street car No. 33 of the R. T. & L. Co. on the corner. The car stopped to pick up passengers so I drove my team ahead, as I was about 10 feet from the middle of the street, the motorman turned the power on and started to go ahead. I stopped about two feet away from the car and saved my mules by pulling them the right hand side of my car. The car passed me and just caught my singletree which was sticking out. At the time a man was on the steps of the car, and got tangled with the singletree and fell down." The same witness says (page 50) that he stopped the tramcar at the mauka corner of Nuuanu street and that the defendant's car was then at a standstill on the left hand side of Nuuanu street on Hotel street, that the witness started up first, that the motorman "was looking over towards the left hand side, when I started I heard the conductor give the signal two bells, and as he gave the signal of two bells the motorman was looking over the other side" (page 51). The witness says that he then saw the motorman's hand go around on the lever and the car going ahead. He adds, (page 52), "I saw that I did not have time enough to go over and I tried to stop the car and pulled up my mules to one side and this whiffletree on the tramcar stayed sticking out that way and as the electric car came along I saw somebody get tangled with the whiffletree all along and down he went." In answer to the question, "How close to the electric car did the tramcar come?" the witness after mentioning the singletrees "they have on each tramcar" answered, "half of one length, that length was beneath the car when the horses or mules switched around" (page 52). "The mules turned right nearly around the car on

the right hand side of the car, the chains were along and they switched right to one side" (page 53).

The exception to the refusal to grant the motion for a non-suit cannot be sustained.

The defendant relies mainly upon the following three points, based upon its exception to the "verdict, decision and judgment as being contrary to law, against the evidence and weight of the evidence" and upon its exception to the refusal of the court to order a physical examination of the plaintiff.

1.   "That the evidence in this case does not show any negligence on the part of the defendant.

2.   "If the defendant was guilty of negligence then the plaintiff was guilty of contributory negligence and cannot recover.

3.   "The refusal to grant a physical examination of the plain·tiff of some sort is reversible error."

The second of these points, namely, that the plaintiff was guilty of contributory negligence, will be considered first.

The evidence shows that the plaintiff about 6 o'clock p. m. on Saturday of February 22, the anniversary of Washington's birthday and a public holiday, stepped upon the outer platform or standing board of this car after it had stopped for passengers near the crossing of Hotel street and upon the upper or mauka side of the car.   That while standing there he paid his fare and walked forward upon the standing board to see if he could find room to sit down in the car, that he got a little forward of the middle of the car, still on the step or standing board, when the collision occurred.   That he was struck by the end of the whiffle-tree of the tramcar immediately after he had started forward. The policeman, Keopuhiwa, a witness for the defendant, testified (page 167), that the car "was full and there were some outside of the body of the car".   We cannot say as a matter of law that the plaintiff was guilty of contributory negligence in getting upon the car at the side or in walking along the outside stepping board to find a seat, the car appearing to be full.   The stepping board is intended to be used for that purpose and that it is so used by the public is a matter of common notoriety.   In

*Thane v. Traction Co.,* 191 Pa. St. 252, the plaintiff had taken a position on the back platform with knowledge that there were vacant seats within the car, he stood holding a metal rod which protected the back window when a collision occurred, the effect of which was to throw him forwards and then backwards, causing him to strike the iron dashboard with his back and fall into the street receiving injuries. The court held that the plaintiff's riding upon the platform was negligence *per se,* saying: "The proper and assigned place for passengers is inside the car. Unless he shows some valid reason to excuse him, a passenger is bound to put himself in the appointed place, and if he does not, he takes the risk of his location elsewhere. This is the settled rule of all our cases." * * * "In the present case it is undisputed that there were vacant seats in the car, one of which the plaintiff could and should have taken. He chose instead to stay on the platform. In so doing he took all the risks incident to that position. The injury he received by being thrown against the dasher was the direct consequence of his position, and would not have been received had he been inside." The court added, however, the following remark: "Cases where the car is crowded and no seat is available rest on a different basis. There the traveler, if he is to get on at all, must stand on the platform with its rods, etc., to hold by, or inside with a strap for that purpose. He is presented with a strap for that purpose. He is presented with a choice of evils, and his action must be judged by the jury, while on the other hand the carrier by receiving him undertakes and gives him assurance that it will take care of him and guard him against accident as far as the circumstances permit. *Germantown Pass. Ry. Co. v. Walling,* 97 Pa. 55, 58, p. 253 *Ib.*

In *Bumbear v. Traction Co.,* 198 Pa. 198, "It appeared from the testimony in the case that the plaintiff got on the side step of an open car to ride to his work, at a place where he had taken the cars every morning for several weeks before. The car as usual was full and there was not standing room inside or on the platform. He stood as usual on the side step, which was filled

with passengers. The conductor received his fare and made no
objection to his standing on the step. At a place where the street
curved, the railway tracks were so near to one side as barely to
leave room for a wagon to stand between them and the walls of
a hotel building. At this place each morning during the sum-
mer, ice wagons stood while ice was delivered at the hotel. On
the morning of the accident the hub of a wheel of an ice wagon
was so near to the tracks as to project over the side step of the
car. The motorman could have seen the position of the wagon
when a square from it, and he was signaled by the man in charge
of the wagon to stop. He went on without slackening the speed
of the car, and the plaintiff was injured by the hub of the wheel
striking him." pp. 200, 201, *Ib.* The court held that the case
was clearly for the jury, saying: "As the plaintiff was received
as a passenger when the car was so full that he could not go in-
side, and stood on the step with the knowledge and assent of the
conductor, he could assume that reasonable precautions would
be taken to protect him from such dangers as could be readily
seen and guarded against." p. 201, *Ib.*

In *Watson v. Railway Co.,* 91 Me. 584, "The plaintiff, while
riding upon the front platform of one of the defendant's elec-
tric street cars, was thrown from the car by its sudden jolting,
and, striking the ground with considerable violence, sustained
more or less injury." In that case the presiding justice directed
a verdict for the defendant on the ground, "that the riding upon
the platform of a passenger car upon the railroad is such negli-
gence upon the part of the passenger as would bar his recovery
for injury sustained by being thrown from the platform in
rounding a curve." And again, "it is settled as a question of
law that one who rides upon the platform of a car and is injured
by being thrown from it as the car rounds a curve is guilty of
contributory negligence." The court said: "In our opinion
this was not a correct statement of law when applied to a street
railroad car, whether propelled by horses, electricity or other-
wise. Riding upon the platforms of such cars is too much en-
couraged by transportation companies and too much indulged

in by the public, for the court to say, as a matter of law, that the mere riding upon the platform of such a car is conclusive evidence of negligence, or is negligence *per se,* or is negligence in law. It depends upon too many other circumstances and conditions for a court to lay down any hard and fast rule in regard to it; but it is a fact which should ordinarily be submitted to the jury in connection with all other circumstances of the case." p. 591, *Ib.* \* \* \* "It is a notorious fact that street railroad companies, whose cars are propelled by electricity, constantly accept and invite passengers to ride upon the platforms of their cars when there is no room inside, and that persons having occasion to use such cars are frequently glad for even a foothold upon the platform, step or footboard. Neither carrier nor public have regarded the street car platform as a known place of danger, and we are not disposed to say, as a matter of law, that a passenger who rides upon the platform of an electric street car is thereby guilty of such contributory negligence as to prevent his recovery for injuries sustained through the fault of an employee of the transportation company. We hold rather that it is a circumstance to be submitted to and decided by the jury." pp. 591, 592, *Ib.*

We think that the views expressed by the learned courts in the cases above cited, all of which cases are referred to in the defendant's brief, fully sustain our view that in the present case a verdict for the defendant could not properly have been directed on the ground that the plaintiff's acts had precluded him from recovery of damages.

The exception to the finding "as against the evidence" raises the question whether the case shows any conduct of the defendant on which it legally can be held liable for the plaintiff's injuries. Negligence is a broad term, including things done or omitted to be done. A common carrier for instance, is "bound to exercise the highest degree of care and prudence, the utmost human skill and foresight." *Coddington v. Brooklyn Ry. Co.,* 102 N. Y. 66. But this rule is not to be so construed as to re-

quire dangers to be avoided which could not reasonably have been foreseen. 2 Sher. & Redf. on Negl., Sec. 496.

The defendant's motion for non-suit was not based on its claim that the plaintiff's evidence showed no negligence on the part of the defendant or that it showed contributory negligence by the plaintiff; but on the ground that the tramcar driver had tried to cross the electric car track without waiting to allow the electric car to precede; the facts that the defendant's motorman started his car after the tramcar had started and without looking towards the tramcar were considered by the trial judge as excusing the tram driver from stopping to await the crossing of the electric car. We think that sitting as the trial judge was doing, in place of a jury, he was justified in so ruling.

The mere facts here mentioned, a prior starting without looking might not, however, justify a finding of negligence on the part of the defendant; the relative distances of the two cars from the nearer rail of the intersecting track; the relative rates of speed or slowness at which the two cars started and began to move; the comparative ease or difficulty of controlling the electric power of the defendant's car and the mules drawing the tramcar are among the factors in a question of negligence or due care in this case, and evidence on these matters was before the trial judge. The motorman testified (page 94, transcript of evidence) that "as he started he looked up the street and saw one of the tramcars coming down at a pretty good lick (p. 98, *Ib.*); referring to the tramcar driver, that the latter "had plenty of time to stop and I never paid any more attention to him and I paid no more attention to this car until I heard it strike into the rear of my car." A witness testified (p. 125, *Ib.*) "that the tramcar was nearer the intersection of the tracks than was the electric car when the latter started. Another witness testified (p. 176, *Ib.*) that "when the electric car started the driver of the tram tried to stop but could not."

The question is not free from difficulty. On the one hand if it be true that the tramcar driver was himself guilty of negligence nevertheless such contributory negligence would not be a

defense, as we think, to an action founded on and sustained by proofs of defendant's negligence. There is no doubt of the correctness of the rule laid down by the United States Supreme Court in *District of Columbia v. Moulton,* 186 U. S., 576, viz:

"Where but one inference can reasonably be drawn from the evidence the question of negligence or no negligence is one of law for the court." And further, as stated by the court in the same case, "When the evidence given at a trial with all the inferences which a jury could justifiably draw from it is insufficient to support a verdict for the plaintiff so that such verdict if returned must be set aside the court is not bound to submit the case to the jury but may direct a verdict for the defendant."

In *Patton v. Texas & P. R. Co.,* 179 U. S. 358, the trial judge had directed a verdict for the defendant and refused to leave the question of negligence to the jury in an action by a fireman for injuries sustained by the turning of a loose step on the locomotive; this course was approved; the court saying: "Where the testimony leaves the matter uncertain and shows that any one of a half dozen things may have brought about the injury for some of which the employer is responsible and for some of which he is not, it is not for the jury to guess between these half a dozen cases and find that the negligence of the employer was the real cause when there is no satisfactory foundation in the testimony for the conclusion."

Applying the rule of reasonable inferences to the facts of this case, can it be said to be an unreasonable inference, or an inference upon which all persons would agree, that the motorman did not use such care as the circumstances required in going along, relying on the tram driver stopping his mules in time to avoid a collision; or during the few seconds intervening between the starting of his car and reaching the tramcar track, in not looking towards the oncoming mules; or that if he had done so he would not easily have avoided the clash.

We are unable to say, as matter of law, that the judge who heard the witnesses in this case was not justified in finding, upon all of the facts before him, that the defendant was negligent.

The remaining question is whether the trial judge erroneously refused the defendant's motion to order a physical examination of the plaintiff. Upon this question it is first to be observed that the defendant expressly disclaimed at the trial any suggestion of fraud or misrepresentation on the part of the plaintiff. It is next to be observed that the request and motion for this examination were not made by the defendant until after one of the physicians had testified for the plaintiff and another physician for the defendant. On re-direct examination of the defendant's second medical witness, Dr. Moore, the defendant's attorney (p. 232, *Ib.*) asked him, "from what you have now learned of the case can you state whether or not this paralysis, or paresis is liable to be permanent and that that permanency was the result of the accident on the man?" To which the medical witness answered: "I think I would be unable to say until you would make certain electrical tests of the nerves and muscles themselves to find whether degeneration had taken place or not, I do not think any one could tell without such examination."

Whether or not under other circumstances a defendant is entitled to obtain an examination by a physician or surgeon of the physical condition of the plaintiff is a question of law which the circumstances of this case do not require us to determine. Assuming for the purposes of this case, and without determining, that a trial judge had such power; there is no doubt that there is no absolute right of the defendant to demand its exercise, and also "that the examination should be applied for and made before entering upon the trial and should be ordered and conducted under the direction of the court." *City of South Bend v. Turner*, 156 Ind. 426.

The exceptions are overruled.

*D. H. Case, Avon H. Crook* and *C. F. Clemons* for plaintiff. *Castle & Withington* for defendant.