CHARLES S. MORITA, AS AN INDIVIDUAL, IN HIS OWN BEHALF AND ON THE BEHALF OF ALL OTHERS SIMILARLY SITUATED, AND AS CHARLES S. MORITA, DOING BUSINESS AS CHARLEY'S TAXI & U-DRIVE, IN HIS OWN BEHALF AND ON THE BEHALF OF ALL OTHERS SIMILARLY SITUATED, AND AUTO RENTAL COMPANY, LIMITED, AN HAWAIIAN CORPORATION, DOING BUSINESS AS GRAY LINE HAWAII, ON ITS OWN BEHALF AND ON THE BEHALF OF ALL OTHERS SIMILARLY SITUATED v. PUBLIC UTILITIES COMMISSION OF THE TERRITORY OF HAWAII AND ROBERT T. WILLIAMS, JESSE H. KOPP, FRED G. MANARY, LEO G. LYCURGUS AND MASARU SHINSEKI, AS MEMBERS OF THE PUBLIC UTILITIES COMMISSION OF THE TERRITORY OF HAWAII.

NO. 2978.

580

ARGUED MAY 5, 1954.　　　　　　DECIDED JUNE 30, 1954.

TOWSE, C. J., LE BARON AND STAINBACK, JJ.

OPINION OF THE COURT BY STAINBACK, J.

This is an appeal from an order of the public utilities commission granting the application of the Honolulu Rapid Transit Company, Limited, to conduct a tour service on a schedule basis around the island of Oahu.

It is alleged that the applicant is a public utility as defined by section 4701, Revised Laws of Hawaii 1945, operating a transportation service in Honolulu pursuant to its franchise; that applicant had surveyed the field and ascertained that there was a public need and convenience for such a service at reasonable rates on a schedule basis, and prayed for the issuance of a certificate of public convenience and necessity pursuant to section 4719, Revised Laws of Hawaii 1945, and rule 5 of the commission's rules of practice. It sets out the proposed rule and alleges that no other person held a certificate for such service; it also set forth the proposed schedules and equipment, as well as the applicant's financial ability to perform the service. It also alleged that the proposed around-the-island service could be operated at a profit and would afford applicant additional revenues that would tend to avoid future fare increases in its transportation system which had decreased since 1941.

A public hearing was held on December 10, 1953, pursuant to published notice. Appellant Auto Rental Company appeared by counsel and filed a protest and petitioned for leave to intervene. Appellant Morita appeared in

person and protested the granting of the application. Statements and letters from the public were received and read into the record and the applicant presented certain evidence with reference to its revenue passengers, tax bill, population of Oahu, the increase in tourists in Honolulu, the existing fares charged by appellant Auto Rental and other limousine services, and contrasted such charge of $9.50 with the proposed Honolulu Rapid Transit charge of $3.45. Evidence was further introduced by the treasurer of the company that the tours could be operated at a profit. The evidence also showed that the Honolulu Rapid Transit Company had been chartering its equipment to appellant Auto Rental and others for use in a similar around-the-island service.

After the evidence of the Honolulu Rapid Transit, the hearing was adjourned until January 22, 1954, for the commission to investigate the matter and report. The report consisted of a survey made by the commission on the question of whether there was a need for the proposed service and whether it would be patronized.

At the conclusion of the hearing on January 22, the board of supervisors addressed a letter to the commission calling attention to the territorial limits of the transit company's franchise and questioning the commission's authority to grant a certificate outside these limits.

On March 11, 1954, the commission made its decision and issued an order granting a certificate of public convenience and necessity for the proposed tour schedule around the island of Oahu.

From this order and decision an appeal was filed which presents two questions: (1) Does the franchise to the Honolulu Rapid Transit Company, authorizing it to operate a street railway and bus system in the district of Honolulu and a portion of the district of Ewa, prohibit it from engaging in any transportation activity outside of

the said districts? Or, to express the proposition positively rather than negatively, does the charter creating the Honolulu Rapid Transit Company as a corporation, as distinguished from its franchise (the grant of certain special privileges), authorize the company to engage in operating such a bus system as proposed? (2) Was the decision and order of the commission, that the public convenience and necessity would be served by granting a certificate, supported by substanitial evidence?

Act 69, Session Laws of 1898, granted a franchise or special privilege to operate a street railway system in the district of Honolulu to a number of individuals consisting of Clinton G. Ballentyne and others "and to their associates and assigns or to such corporation as may be organized by them." Pursuant to this Act, a corporation was thereafter formed, organized by Mr. Ballentyne and his associates, called the Honolulu Rapid Transit and Land Company, to which the franchise was assigned. The life of the franchise was for a term of thirty years but by Act 186 of the Session Laws of Hawaii 1921 its life was extended indefinitely.

A franchise is a special privilege conferred by governmental authority on corporations, on individual persons or associations to do something otherwise legally incompetent, such as the right to operate a ferry, a railway, a street railway system, and to lay tracks and poles along public streets, etc. Unfortunately, much confusion has resulted because the term "franchise" has frequently been used with two meanings: one, the right to be a corporation, because frequently the franchise and the creation of the corporation occurred under one legislative act; the other, special rights, privileges and powers granted to the corporation (or to an individual) by legislative act. The special rights granted are not ordinarily part of the corporation; they can be granted to an individual with the same legal

force and effect as to a corporation. "They are no part of corporate life if owned by a corporation, any more than they are a part of individual life if owned by a human being." (*Lord* v. *Equitable Life Ass. Co. of U.S.,* 194 N. Y. 212.)

The same corporation may hold several different franchises just as an individual may own separate items of property, whether franchises or other property. (Fletcher, *Cyclopedia Corporations,* Perm. Ed., vol. 6A, § 2879, p. 448.)

Obviously, the franchise granted to Mr. Ballentyne and his associates did not give corporate existence to the Honolulu Rapid Transit and Land Company, but the charter afterwards obtained by Mr. Ballentyne and his associates did create the corporation to which the franchise was duly assigned.

The corporation formed to take over the franchise was created by a charter granted on the 30th day of August, 1898, by the minister of the interior under chapter 127, Laws of 1897. This charter gave the corporation life for a term of fifty years. (Note that the franchise was for a period of thirty years only.)

Apparently further confusion has arisen because the Honolulu Rapid Transit and Land Company was chartered and not organized under articles of association which at that time was limited to businesses of "mercantile, agricultural or manufacturing." To add to the confusion, the term "charter" is often used in the sense of "franchise." This mixing of terminology requires an examination of the laws relative to incorporating under the early statutes of Hawaii and the later amendments thereto.

The first Act providing for the organization of corporations was contained in Statute Laws, volume 1, 1845-1846, at page 111, relative to the powers of the minister of the interior. This section provided: "Said minister shall also

have power, at the direction of His Majesty in privy council, to issue charters of incorporation to any private body politic and corporate, calculated by its operations to benefit the government in any island division of this kingdom; and *to confer upon such corporation all the privileges and powers of a person in law,* for any term of time, to be limited in said charter, upon the terms and conditions to be therein expressed, reserving to His Majesty's government the right of annulment, as prescribed in the act to organize the judiciary." (Emphasis added.)

Subsequent thereto, in 1856, an Act relating to corporations provided for the powers of corporations and the regulation thereof in great detail, including the formation by application to the minister of the interior by petition showing that three fourths of the shares had been subscribed, the object of incorporation, the amount of stock proposed, etc. Such corporations were granted *charters* by the minister of the interior.

In 1890 the Civil Code was amended in regard to corporations by providing that joint stock companies might be organized for the purpose of carrying on any business or undertaking either "mercantile, agricultural or manufacturing."

Thus, in 1898, we have two methods of creating corporations: (1) the old general method by charter issued by the minister of the interior; and (2) by filing articles of association for carrying on the business of "mercantile, agricultural or manufacturing."

When the owners of the franchise granted to Mr. Ballentyne and his associates attempted to form a corporation, they were informed by the executive council under letter dated August 17, 1898, "That the Executive Council do not consider that said corporation is a mercantile, agricultural or manufacturing corporation and that therefore

it should incorporate under the *general corporation Act.*" (Emphasis added.)

As to corporations that were not "mercantile, agricultural or manufacturing" and so required a charter rather than articles of association, see letter in the territorial archives of September 2, 1898, addressed to the minister of the interior by the then attorney general, William O. Smith, in which he advised the minister " * * * joint stock companies may incorporate for either of one of the following purposes, namely: mercantile, agricultural or manufacturing. The articles of incorporation in the case under consideration hardly seem to me to come under any one of those classes. The objects of the corporation as set forth in the articles of association are first, to send a certain person to Alaska to explore and prospect for gold and precious metals; secondly, 'to work, mine, float, lease or sell said mineral properties.' It does not seem to me that the objects named come under any one of the heads of 'mercantile, agricultural or manufacturing.' * * * or, on the other hand, if they desire to incorporate under the general corporation law (Chapter 127 of the Civil Laws) and conform with the provisions of that statute, the object might be attained."

At that time, the "general corporation Act" was chapter 127, Laws of 1897, relative to the issuance of charters, and not chapter 128 which related to creation by articles of association.

The holders of the franchise, Ballentyne et als., then secured the issuance of a charter creating a corporation from the minister of the interior under the "general corporation Act" as above stated.

As illustrating the confusion about the early law of incorporation and the formation of the Honolulu Rapid Transit and Land Company, assignee of the franchise, the brief of appellants states: "The transit company attempts

to confuse this Court by referring not to the company's *charter,* but to its *articles of association,* as having been amended to permit operations outside of Honolulu. But it is the *charter* of the company which has been amended, and not the articles, for the very precise reason that this company is authorized to do business only by reason of its having a charter, and not because it was organized under the general incorporation laws with articles of association." (Reply brief of appellants, p. 9.) So too the brief of the Honolulu Rapid Transit Company states: "The HRT is a corporation with *articles of association* just like any other corporation. The articles of association state the corporate powers of the company. This document is different from the legislation conferring statutory rights upon the company." (Emphasis added.)

At the time the Honolulu Rapid Transit and Land Company (as then named) was organized, the general corporation Act was chapter 127, Laws of 1897, relative to the issuance of charters, and a charter was issued to this company and it has not and never has had "articles of association."

If we follow the history of the corporation laws of Hawaii we find that by various statutes the organization under articles of association was later broadened to include any type of business organization, while organization under charters was restricted for cemetery, ecclesiastical, charitable and similar nonprofit associations. (Session Laws of Hawaii 1909, Act 20, pp. 20, 21.)

Thus, for many years all business corporations have been organized under articles of association and not by charter but there are a number of corporations organized years ago (such as the Honolulu Rapid Transit Company) still operating under "charters."

As the law originally provided, the minister of the interior, with the approval of the executive council, had

"power to grant and allow amendments to all existing Charters of Incorporation and Articles of Association of incorporated Companies and all hereafter granted, provided such amendments confer no other or greater powers or privileges than could be lawfully conferred or obtained in an original Charter of Incorporation or Articles of Association." (Civil Laws of 1897, § 2043.)

Section 2043 of the Civil Laws of 1897 relative to amendments to charters appeared as section 2546, Revised Laws of Hawaii 1905, substituting the word "governor" for those of "executive council" and the word "treasurer" for those of "minister of the interior," and finally appeared as section 8315, Revised Laws of Hawaii 1945, which required no approval of either the governor or the treasurer except as to nonprofit corporations. This section (Revised Laws of Hawaii 1945, section 8315) provides that " * * * the articles of association or charter of any corporation may be amended * * * and any such amendment so adopted shall be and become effective, and the articles of association or charter shall be and become amended, upon the filing in the office of the territorial treasurer of a verified certificate, * * * and certifying that the amendment was adopted by the required vote as aforesaid at a meeting duly called and held for the purpose; *provided* that no amendment shall confer any other or greater powers or privileges than could lawfully be conferred or obtained in an original charter or articles of association; * * *."

Under these provisions the charter so granted was amended from time to time as to name (dropping the words "and Land"), as to the amount of capitalization (at one time increasing, at a second time decreasing), as to resignation of officers, and other matters, and finally on July 30, 1946, under the provisions of section 8315, Revised Laws of Hawaii 1945, the charter was amended in several respects but particularly by enlarging article III relating

to the objects and purposes of the corporation.

Counsel for appellants quotes the provisions of the franchise showing that the Honolulu Rapid Transit is authorized to operate a street railway system in the district of Honolulu and in a portion of the district of Ewa, except when the United States Fleet was in Pearl Harbor with a personnel of 10,000 or over, the public utilities commission may authorize the transit company to extend its service outside the territorial limits of the franchise as defined. He cites many authorities dealing with the construction of a franchise and setting forth that it is strictly construed against the grantee and in favor of the grantor.

It is obvious and needs no citation of authority that the terms of the franchise do not grant the Honolulu Rapid Transit Company any privilege to operate a street railway system outside of territorial limits as set forth in the franchise. Neither the commission nor its attorney, the attorney general, nor the Honolulu Rapid Transit Company makes any claim that the franchise gives any authority to operate an around-the-island tour service such as has been sought in this case.

As pointed out in the briefs by the attorney general and the intervenor, this is not a franchise operation.

Section 4719, Revised Laws of Hawaii 1945, as amended, provides in substance that the public utilities commission is required to issue a certificate of public convenience and necessity to any applicant who can qualify therefor. A certificate of public convenience and necessity is a different authorization from that of a franchise involving different rights and duties. (*Territory* v. *Fung*, 34 Haw. 52, pp. 61-64.) The *Territory* v. *Fung* case points out that a franchise and a governmental license differ widely in origin and in legal characteristics; among other characteristics, a franchise is a property right and subject to alienation while a governmental license is considered as a

mere privilege, is revocable and temporary, conferring no vested rights of property, and is personal to the licensee.

The nature of the franchise has heretofore been pointed out and that very often franchises were granted to individuals and partnerships as well as to corporations and, as shown, the original Honolulu Rapid Transit Company franchise was to certain "individuals." There is no rule of law that such a grantee, whether an individual, a corporation or a partnership, is thereby prohibited from all activities other than those authorized by the special franchise. It is common, if not customary, for public utilities to engage in businesses other than that authorized by the franchise. Most electric utility companies handle appliances of all types and descriptions. In fact, the Honolulu Rapid Transit Company was to a large extent engaged in real estate during its early history. Also, the Honolulu Rapid Transit Company has been chartering its equipment for an around-the-island service.

Article III of the amended charter sets forth the objects and purposes of the corporation, among others: "(a) To own, control and operate under franchises, certificates of convenience and necessity or otherwise a property, a plant and equipment for the transportation of passengers or property between points in the Territory of Hawaii."

Many of the cases cited by counsel for appellants relate to whether utility commissions can force the utility to go beyond its franchise area and have no bearing upon the case before us.

The case of *Fuller* v. *Rapid Transit Co.*, 16 Hawaii 1, cited in appellants' supplementary memorandum, has nothing to do with the question now before the court but is merely an admission of corporate existence by the company when sued in tort.

Section 4719, Revised Laws of Hawaii 1945, as amended, is a valid exercise of legislative power and the commis-

sion is charged with the duty of conducting a hearing upon applications for certificates and determining the facts of public convenience and necessity. (*Territory* v. *Fung,* 34 Haw. 52.)

This court, as many other courts, has decided that an appellate court should not substitute its judgment for that of a commission whose finding will be presumed to be reasonable if supported by substantial evidence. Our courts treat orders of commissions in the same manner as a decree by a circuit judge. (*Honolulu Gas Co.* v. *Pub. Util. Comm.,* 33 Haw. 487.) Our court in the *Honolulu Gas Co.* case, *supra,* at pages 521-522, quoted with approval the following from *Town of Harrisville* v. *Public Service Commission,* 103 W. Va. 526, 138 S. E. 99: "We cannot substitute our judgment for the judgment of the commission, on the weight of evidence. Its findings are presumed to be reasonable, lawful and correct, and will not be set aside by this court if based upon substantial evidence. 'Findings of fact by the public service commission, based upon evidence to support them, generally will not be reviewed by this court.' * * * Nor will such findings be disturbed on appeal unless the commission has acted so arbitrarily and unjustly as to fix rates contrary to the evidence, or without evidence to support them. * * * The value of evidence in rate proceedings varies, and the weight to be given to it is peculiarly for the body experienced in rates, and familiar with the intricacies of rate making."

In a case of this type the evidence must necessarily be largely opinion evidence and to some extent may be hearsay as the commission is not bound by strict rules of evidence. It is unnecessary to discuss the evidence in detail as there is much more than a scintilla of evidence. The survey shows that such a service is attractive to the public and that at present merely private cabs charging a much higher fare than the proposed one are the only ones furnishing around-the-island service. It is not necessary to

prove that the proposed service is indispensable. It has been shown to be attractive and desirable and will fill a need, particularly in serving visitors and tourists.

The ownership of a franchise by the Honolulu Rapid Transit Company to operate a street railway system within the district of Honolulu and a portion of the district of Ewa does not prohibit the corporation from engaging in other business within its corporate powers (charter) including the operation of buses under a certificate of convenience and necessity outside of the area covered by its franchise; further, the certificate of public convenience and necessity granted by the public utilities commission is supported by more than a scintilla of evidence.

Decision and order of the public utilities commission sustained.

*R. G. Dodge* (*Heen, Kai, Dodge & Lum* on the briefs) for appellants.

*J. G. Anthony* (*Robertson, Castle & Anthony* on the brief) for appellee Honolulu Rapid Transit Co., Ltd.

*R. K. Sharpless,* Deputy Attorney General (also on the brief), for appellees Public Utilities Commission.