TERRITORY OF HAWAII, BY THE PUBLIC UTILITIES COMMISSION OF THE TERRITORY OF HAWAII, *v.* FRANK A. FUNG, ALSO KNOWN AS FRANK AMANA, TRUSTEE FOR THE CHECKER CAB COMPANY OF HAWAII.

No. 2302.

SUBMITTED OCTOBER 29, 1936.    DECIDED DECEMBER 23, 1936.

BANKS AND PETERS, JJ., AND CIRCUIT JUDGE CRISTY
IN PLACE OF COKE, C. J., ABSENT.

OPINION OF THE COURT BY PETERS, J.

This is a proceeding by the public utilities commission of the Territory of Hawaii to enjoin the respondent as a

common carrier of passengers from operating motor vehicles upon and using public highways of the City and County of Honolulu for such service without first obtaining from the commission a certificate of public convenience and necessity as required by section 7958, R. L. 1935. The section referred to is quoted in the margin.

To the bill of complaint the respondent demurred and the demurrer was sustained. From the order sustaining the demurrer an interlocutory appeal was allowed to this court.

The demurrer alleges numerous general and special grounds. The only ground for equitable relief alleged in the bill of complaint is the failure of the respondent to comply with the requirement of the statute in respect to a certificate of public convenience and necessity. Hence the only grounds of demurrer which may be considered are those challenging the validity of the provisions of the statute in that regard. They are: 1. That the requirement of section 7958, R. L. 1935, in respect to a certificate of convenience and necessity is in excess of the legislative powers of the legislature of the Territory of Hawaii; 2. That said

R. L. 1935, § 7958. "It is declared unlawful for any common carrier operating upon and using the public highways to furnish such service without first obtaining from the commission a certificate declaring that public convenience and necessity require such operation and service. The commission shall have power and it shall be its duty after public hearing to issue such certificate as prayed for or to refuse to issue the same, or to issue it for the partial exercise only of the privilege sought and may attach to the exercise of the rights granted by such certificate such terms and conditions as in its judgment the public convenience and necessity may require; provided, however, that the business of any public utility which presents evidence of bona fide operation on February 15, 1933, shall be presumed to be necessary to public convenience and necessity. No such certificate shall be issued for a term longer than four years. The commission may at any time suspend, alter or amend any certificate issued, and after hearing for cause may revoke any such certificate. Said common carriers shall operate and furnish service in strict conformity with the current existing terms and provisions of their respective certificates of convenience and necessity, except in cases of emergency to be defined by rules laid down by the commission."

section in respect to the requirements of the certificate of public convenience and necessity delegates the determination of public convenience and necessity to the uncontrolled discretion of the commission and hence is unconstitutional, invalid, unlawful and void; 3. That the requirement of said section in respect to a certificate of public convenience and necessity deprives the respondent of liberty and property without due process of law and is contrary to the provisions of the Fifth Article of the Amendments to the Constitution of the United States; 4. That a certificate of public convenience and necessity issued under the provisions of section 7958, R. L. 1935, is a franchise within the meaning of section 55 of the Hawaiian Organic Act.

1. It affirmatively appears from the allegations of the bill that the defendant is a common carrier of passengers by automobile providing for such service on a regular route between fixed termini wholly within the City and County of Honolulu and is a public utility as defined in chapter 261, section 7940, R. L. 1935. As such, within constitutional limitations, he is subject to reasonable regulation consistent with the welfare of the public he seeks to serve and appropriate to its protection. (*Munn* v. *Illinois,* 94 U. S. 113; *Budd* v. *New York,* 143 U. S. 517; 2 Wyman, Public Service Corporations, § 1401.) The power to regulate utilities is included in the attribute of sovereignty known as the "police power" and locally is reposed in the territorial legislature under section 55 of the Organic Act extending its powers "to all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States locally applicable." (*Clinton* v. *Englebrecht,* 13 Wall. [U. S.] 434, 441; *Simms* v. *Simms,* 175 U. S. 162, 168; *Maynard* v. *Hill,* 125 U. S. 190, 203.)

One of the constitutional limitations placed upon the exercise by the local legislature of its police powers and that invoked by the respondent is the due process clause

of the Fifth Amendment to the Constitution of the United States which, as construed, requires that the "means [of regulation] selected shall have a real and substantial relation to the object sought to be obtained," and "not be unreasonable, arbitrary or capricious." *Nebbia* v. *New York,* 291 U. S. 502, 525.

Whatever other object or objects the statute sought to obtain, the protection of the consuming public is sufficient justification for the statutory requirement and the statutory means employed have a real and substantial relation to that object. The primary object of the regulation is the control of competition. "Its [the requirement of a certificate of public convenience and necessity] primary purpose is not regulation with a view to safety or to conservation of the highways, but the prohibition of competition. It determines not the manner of use, but the persons by whom the highways may be used. It prohibits such use to some persons while permitting it to others for the same purpose and in the same manner." *Buck* v. *Kuykendall,* 267 U. S. 307, 315.

The requirement of a certificate of convenience and necessity for the operation of motor vehicles by common carriers on the public streets is but the logical development of a similar requirement previously obtaining in respect to public utilities generally for the protection of the consuming public from the harmful results of uncontrolled competition. (See list of statutes, 28 Mich. L. Rev. 121.) The duplication of investment, organization and operating expenses in excess of the public need is an economic waste usually resulting in higher rates as well as inferior service. (3 Pond, Public Utilities, § 913; 33 Harvard L. Rev. 576.) Whether regulated or unrestricted competition is best calculated to conserve and protect the interests of the consuming public is a question of public policy for the legislature and not for the courts to

determine. Unless clearly arbitrary, capricious and unreasonable—and that would require an inquiry into the facts —the policy of the legislature in that regard must be sustained. "The legislature being familiar with local conditions is, primarily, the judge of the necessity of such enactments. The mere fact that a court may differ with the legislature in its views of public policy, or that judges may hold views inconsistent with the propriety of the legislation in question, affords no ground for judicial interference, unless the act in question is unmistakably and palpably in excess of legislative power." *McLean* v. *Arkansas*, 211 U. S. 539, 547. "The scope of judicial inquiry in deciding the question of *power* is not to be confused with the scope of legislative considerations in dealing with the matter of *policy*. Whether the enactment is wise or unwise, whether it is based on sound economic theory, whether it is the best means to achieve the desired result, whether, in short, the legislative discretion within its prescribed limits should be exercised in a particular manner, are matters for the judgment of the legislature, and the earnest conflict of serious opinion does not suffice to bring them within the range of judicial cognizance." *Chicago, B. & Quincy R. R. Co.* v. *McGuire*, 219 U. S. 549, 569.

Hawaii is not alone in its effort to control competition in this field of public service. Similar limitations have been imposed elsewhere and have uniformly been approved by the courts as a legitimate exercise of the police powers. Citation of the numerous state authorities is unnecessary. The epitomic conclusion of the court in *Buck* v. *Kuykendall, supra,* will suffice (p. 315) : "The * * * statute is not objectionable because it is designed primarily to promote good service by excluding unnecessary competing carriers. That purpose * * * is within the State's police power."

2. No claim is made that the Territory may not delegate the enforcement of a statute passed under its police

power to a governmental agency created by it; it is to the alleged indefiniteness of the rule upon which enforcement depends that the respondent objects. Obviously if the determination of public convenience and necessity is delegated to the unguided, arbitrary and capricious action of the commission the requirement is unreasonable and cannot, under the due process clause of the Fifth Amendment to the Constitution of the United States, be enforced as a valid police regulation.

It is quite true that the terms "convenience" and "necessity" are not exact. Their etymological significance is more or less general but "like other general terms [they], get precision from the sense and experience of men and become certain and useful guides in reasoning and conduct." *Mutual Film Corp.* v. *Ohio Indus'l Comm.*, 236 U. S. 230, 245. The term "public convenience and necessity" was in existence long prior to the advent of the "taxicab," "jitney" or "motor bus" and was employed in statutes controlling, among other things, the establishment of highways and the operation of railroads and other public utilities and by administrative and judicial construction, had attained to a certain and well-defined meaning. Read in combination, in the light of related words and the purposes and objects of the requirement, the term is perfectly clear and intelligible and presents a sufficiently definite standard for controlling competition in this field of public service and guiding the commission in the exercise of its administrative discretion. (See *United States* v. *American Bond & Mortgage Co.*, 31 F. [2d] 448, 457; *Red "C" Oil Co.* v. *North Carolina*, 222 U. S. 380, 394; *Radio Comm'n* v. *Nelson Bros. Co.*, 289 U. S. 266, 285.)

3. Holding, as we do, that the control of competition between motor carriers of passengers for hire is a legitimate exercise of the police power it necessarily follows that the requirement of a certificate of public convenience

and necessity as a condition precedent to engaging in the business of a common carrier over and upon the public streets by automobiles does not contravene the due process clause of the Fifth Amendment to the Constitution of the United States.

There is an additional reason why the requirement of a certificate does not deprive respondent of either liberty or property. The use of the public streets by common carriers by automobiles is a privilege and not a right. Title to all public streets and highways within the Territory is vested in the Territory. (R. L. 1935, § 2341; *In re Title of American S. Co.,* 29 Haw. 820.) Their beneficial use is in the public but only for use in the ordinary way; that is for private purposes. To use the public highways as a place of business for private gain is a special and extraordinary and not an ordinary use and the police power of the Territory extends to every regulation reasonably required and appropriate for the public protection against such use. So it is that the privilege of using the streets by common carriers of passengers by automobile may be entirely withdrawn or conditioned as the Territory may reasonably and constitutionally in its discretion see fit. "The streets belong to the public and are primarily for the use of the public in the ordinary way. Their use for the purposes of gain is special and extraordinary, and generally at least, may be prohibited or conditioned as the legislature deems proper." *Packard* v. *Banton,* 264 U. S. 140, 144. "A citizen may have, under the Fourteenth Amendment, the right to travel and transport his property upon them [streets] by auto vehicle. But he has no right to make the highways his place of business by using them as a common carrier for hire. Such use is a privilege which may be granted or withheld by the State in its discretion, without violating either the due process clause or the equal protection clause." *Buck* v. *Kuykendall, supra,* p. 315. (See also

*Frost Trucking Co.* v. *R. R. Com.*, 271 U. S. 583, 592; *Hodge Co.* v. *Cincinnati*, 284 U. S. 335, 337; *Stephenson* v. *Binford*, 287 U. S. 251, 264; *Stanley* v. *Utilities Comm'n.*, 295 U. S. 76, 78.)

The right to operate vehicles, including motor vehicles, over public streets and highways for the carriage of passengers for hire has often been spoken of as a common law right. In the absence of legislation prohibiting such use such vehicles may be operated over the public streets and highways similarly as other vehicles. Where, however, their use is prohibited except upon conditions justified by the reasonable exercise of police powers such use ceases to be a right and becomes a privilege exercisable only upon compliance with the conditions imposed.

4. Respondent contends that a certificate of convenience and necessity is a "limited franchise" and hence invalid as within the inhibition of section 55 of the Organic Act inhibiting the legislature from granting any special or exclusive privilege, immunity or franchise without the approval of Congress. Petitioner, on the other hand, contends that it is a mere revocable license. An excerpt from the section of the Organic Act referred to, containing the inhibition, is quoted in the margin.

It is assumed for the purposes hereof that section 7958, R. L. 1935, has not the approval of Congress.

A franchise has been defined as "a right, privilege or power of public concern, which ought not to be exercised by private individuals at their mere will and pleasure, but should be reserved for public control and administration, either by the government directly, or by public agents, acting under such conditions and regulations as the government may impose in the public interest, and for the public security. * * * Under our system, their existence and disposal are under the control of the legislative department of the government, and they cannot be assumed or exer-

cised without legislative authority. No private person can establish a public highway, or a public ferry, or railroad, or charge tolls for the use of the same, without authority from the legislature, direct or derived." *California* v. *Pacific Railroad Co.,* 127 U. S. 1, 40. A governmental license has been defined as a "temporary permit to do what otherwise would be unlawful." *Public Service Commission, Second Dist.* v. *Booth,* 156 N. Y. S. 140, 141; *City of Dallas* v. *Gill,* 199 S. W. (Tex.) 1144, 1145.

A franchise and a governmental license differ widely in origin and legal characteristics. A franchise is derived from a grant of the sovereign power. (*Blair* v. *Chicago,* 201 U. S. 400, 457.) "The power conferred emanates from, and is a portion of, the power of the government that confers it." *California* v. *Pacific Railroad Co., supra,* 41. A governmental license, not imposed for revenue, has its source in the police power. (*Crowley* v. *Christensen,* 137 U. S. 86, 93.) A franchise is conceived as a subject of contract; *Louisville Gas Co.* v. *Citizens' Gas Co.,* 115 U. S. 683, 692; *New Orleans Water-works Co.* v. *Rivers,* 115 U. S. 674; *Tammany Water W'ks.* v. *N. O. Water W'ks.,* 120 U. S. 64; *Walla Walla* v. *Walla Walla Water Co.,* 172 U. S. 1, 9; perpetual if not limited or qualified as to duration; *Owensboro* v. *Cumberland Telephone Co.,* 230 U. S. 58, 66; a property right; *Wilmington Railroad* v. *Reid,* 13 Wall. (U. S.) 264, 268; *Monongahela Navigation Co.* v. *United States,* 148 U. S. 312, 328, 329; *Owensboro* v. *Cumberland Telephone Co., supra,* and subject to alienation, *Owensboro* v. *Cumberland Telephone Co., supra.* A governmental license on the other hand is considered as a mere privilege; *Child* v. *Bemus,* 21 Atl. (R. I.) 539, 540; is not

---

Organic Act § 55. "That the legislative power of the Territory shall extend to all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States locally applicable. * * * But the legislature shall not grant to any corporation, association, or individual any special or exclusive privilege, immunity, or franchise without the approval of Congress."

of itself a contract unless supported by a consideration other than the license fee; 3 Thompson on Corporations (2d ed.), § 2868; *The Taxicab Cases,* 143 N. Y. S. 279, 288; *Public Service Commission, Second Dist.* v. *Booth, supra;* is revocable and hence temporary; 3 Thompson on Corporations (2d ed.), § 2868; *The Taxicab Cases, supra;* confers no vested right of property; *Public Service Commission, Second Dist.* v. *Booth, supra; Metropolitan Board of Excise* v. *Barrie,* 34 N. Y. 657, 667; and being personal to the licensee is not transferable unless otherwise provided; *Commonwealth* v. *Lavery,* 73 N. E. (Mass.) 884.

Whether a certificate of convenience and necessity is a limited franchise or a mere revocable license depends for its solution upon its legal incidents. Under the statute it is discretionary with the commission to issue the certificate as prayed for or to refuse to issue the same; the commission may issue it for the partial exercise only of the privilege sought and may attach to the exercise of the rights granted by such certificate such terms and conditions as in its judgment the public convenience and necessity may require; no such certificate may be issued for a term longer than four years and the commission may at any time suspend, alter or amend any certificate or after hearing for cause revoke the same; the holder of a certificate is required to operate and furnish service in strict conformity with the current existing terms and provisions of his certificate except in cases of emergency to be defined by rules laid down by the commission.

A "grant" implies a grantee. The statute confers no right to a certificate upon any one. Who may receive a certificate is an incident of the exercise of an administrative discretion limited by public convenience and necessity. The law imposes no obligation upon the commission to grant any certificates. To paraphrase: The holder of a certificate has no exclusive privilege as between itself and

the public welfare or interests. The commission may authorize a second. If the commission determines not to grant a second it is not because the first is exclusive, but because, in the commission's opinion, public convenience and necessity will not be served by the second. (*Farmers' & Merchants' Co-Op. Tel. Co.* v. *Boswell Tel. Co.,* 119 N. E. [Ind.] 513, 515.) A certificate is not a contract; *Roberto* v. *Commissioners of Dept. of Public Utilities,* 160 N. E. (Mass.) 321, 322; it is not property; *Public Service Commission, Second Dist.* v. *Booth, supra;* it confers no property right in the route covered by it; *Pennsylvania R. Co.* v. *Public Utilities Commission,* 155 N. E. (Ohio) 694, 696; it is expressly subject to suspension, alteration or amendment and revocation for cause. It is impliedly not transferable. Obviously it lacks essential legal incidents of a franchise. Tried by every test which can be properly applied to it, it is not a franchise but a mere revocable license; *Pennsylvania R. Co.* v. *Public Utilities Commission, supra; State* v. *Nelson,* 238 Pac. (Utah) 237, 240; *Salt Creek Transp. Co.* v. *Public Service Commission,* 263 Pac. (Wyo.) 621, 622; *Burgess* v. *Brockton,* 126 N. E. (Mass.) 456, 459. Hence a certificate of public convenience and necessity is not a franchise as that term is employed in the inhibition of section 55 of the Organic Act. (*Farmers' & Merchants' Co-Op. Tel. Co.* v. *Boswell Tel. Co., supra; State* v. *Inland Forwarding Corporation,* 2 Pac. [2d] [Wash.] 888, 889; *Haddad* v. *State,* 201 Pac. [Ariz.] 847, 852; *Weksler* v. *Collins,* 147 N. E. [Ill.] 797, 800.)

The case of *Frost* v. *Corporation Commission,* 278 U. S. 515, upon which the respondent mainly relies is not inapposite. The legal incidents of the permit to operate a cotton gin which the court in that case held constituted a franchise are entirely dissimilar from those of the certifi-

cate we are considering in this case. A certificate of public convenience and necessity might rise to the dignity of a franchise were the legislature to attach to it the legal incidents of a franchise. But the local legislature has not done so. Such certificate is a creature of statute. It was unknown to the common law. And the statute of its creation controls.

Sustaining respondent's demurrer was error. It should have been overruled. The decree appealed from is reversed and the cause remanded for further proceedings consistent with this opinion.

*W. B. Pittman,* Attorney General, and *J. Wiig,* Deputy Attorney General, for petitioner.

*E. R. McGhee* for respondent.