150 P.3d 833

**CAPTAIN ANDY'S SAILING, INC., a Hawai'i corporation, Plaintiff–Appellant,**

v.

**DEPARTMENT OF LAND AND NATURAL RESOURCES, State of Hawai'i; Peter T. Young, Director of the Department of Land and Natural Resources and Chairperson of the Board of Land and Natural Resources, State of Hawai'i [1]; Mason Young, Acting Administrator, Division of Boating and Ocean Recreation, Department of Land and Natural Resources, State of Hawai'i; and David Parsons, Administrator, Division of Boating and Ocean Recreation, Department of Land and Natural Resources, State of Hawai'i, Defendants–Appellees.**

No. 25387.

Supreme Court of Hawai'i.

Oct. 26, 2006.

Reconsideration Denied Nov. 30, 2006.

---

1. Pursuant to Hawai'i Rules of Appellate Procedure ("HRAP") Rule 43(c) (2000), Peter T. Young has been substituted as a party to the instant appeal in place of Gilbert Coloma–Agaran, in his official capacity.

Dennis Niles, Wailuku, and Tom Pierce (of Paul, Johnson, Park & Niles), on the briefs, for Plaintiff–Appellant Captain Andy's Sailing, Inc.

Michael Q.Y. Lau and Sonia Faust, Deputy Attorneys General, on the briefs, for Defendant–Appellee State of Hawai'i and Mason Young.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by NAKAYAMA, J.

Plaintiff–Appellant Captain Andy's Sailing, Inc. (hereinafter "CASI"), appeals from the judgment of the Circuit Court of the First Circuit[2] ("circuit court") filed on September 13, 2002, following the grant of judgment on the pleadings, or, in the alternative, summary judgment in favor of Defendants–Appellees Department of Land and Natural Resources, State of Hawai'i ("DLNR") and DLNR officials Peter T. Young, Mason Young, and David Parsons (hereinafter collectively referred to as "the DLNR Defendants"), all of whom were sued in their official capacities.[3] The circuit court found, *inter alia*,[4] that all of CASI's claims against DLNR and the DLNR officials in their official capacities for recovery of $40,882.52 of what the U.S. District Court of the District of Hawai'i ("federal district court") determined to be unconstitutionally assessed tonnage fees were barred by Hawai'i Revised Statutes ("HRS") § 662–15(3) (Supp.1999)[5] because CASI had an alternative remedy under HRS § 40–35 (1993).[6] The circuit court expressed no opin-

2. The Honorable Eden Elizabeth Hifo presided.

3. Mason Young was also sued personally.

4. The circuit court also found that CASI's claims against Mason Young in his personal capacity were barred, but it does not appear that this portion of the circuit court's ruling is being appealed. *See* HRAP Rule 28(b)(4) (2000) ("Points not presented .... will be disregarded.").

5. HRS § 662–15 lists seven enumerated exceptions to the State of Hawaii's express waiver of sovereign immunity for the torts of its employees. Specifically, HRS § 662–15(3) states that HRS Chapter 662 does not apply to "[a]ny claim for which a remedy is provided elsewhere in the laws of the State[.]"

6. HRS § 40–35 provides in pertinent part:
 (a) *Any disputed portion of moneys representing a claim in favor of the State may be paid under*

ion as to whether any applicable statute of limitations had run on a potential HRS § 40–35 claim.

On appeal, CASI advances three distinct points of error: (1) the circuit court erroneously dismissed CASI's claims on the basis of lack of subject matter jurisdiction, because the tax appeal court does not properly have jurisdiction over CASI's claims; (2) HRS § 40–35 did not divest the court of subject matter jurisdiction, because "[t]he remedies afforded by [HRS § 40–35] do not supplant the common law remedies available in a contract dispute over which the circuit court has subject matter jurisdiction under HRS § 661–1";[7] and (3) inasmuch as the DLNR Defendants conceded below that the $40,882.52 in fees at issue "were paid pursuant to a contract," the circuit court erred in finding sovereign immunity from tort claims to be a bar to the instant case *in toto*, where CASI had "made clear that it was invoking HRS § 661–1 [ (waiver of sovereign immunity for certain contract claims) ] as a basis for subject matter jurisdiction."[8]

Based upon the following analysis, we hold: (1) HRS § 40–35, when read together with its legislative history, clearly encompasses the disputed fees in issue such that it was the

statute under which relief had to be sought; (2) on account of this alternate remedy at law, the circuit court properly found CASI's tort claims barred under HRS § 662–15(3); (3) HRS § 661–1 is inapplicable because the ORMA permit under which fees are due is a revocable license, rather than a contract; and (4) CASI has not filed a claim pursuant to HRS § 40–35 within the thirty-day statute of limitations, such that any claim made thereunder is time-barred. Thus, although we are not unmindful of the ostensible inequity visited upon CASI, we are nevertheless compelled to affirm the judgment of the circuit court.

# I. BACKGROUND

## A. Background to the Federal Lawsuit[9]

CASI is a Hawai'i corporation which is, as pertains to the instant appeal, "engaged in the commercial operation of the [49–]passenger carrying catamaran, *Hula Kai*, from the commercial pier at Port Allen, Island of Kauai, State of Hawai'i." CASI began operating the *Hula Kai* on or about December 1999, and at least part of its operation areas included the navigable ocean waters off Kauai's Na Pali Coast. *Captain Andy's*

---

*protest to a public accountant of the department, board, bureau, commission, or other agency of the State with which the claimant has the dispute.* The protest shall be in writing, signed by the person making the payment, or by the person's agent, and shall set forth the grounds of protest. If any payment, or any portion of any payment, is made under protest, the public accountant to whom the payment is made shall hold that portion of the moneys paid under protest in a trust account in the state treasury for a period of thirty days from the date of payment.
(b) *Action to recover moneys paid under protest or proceedings to adjust the claim may be commenced by the payer or claimant against the public accountant to whom the payment was made, in a court of competent jurisdiction, within thirty days from the date of payment. If no suit or proceeding is brought within the thirty-day period, the money paid under protest shall be deposited into the appropriate account in the treasury of the State by the accountant and the amount deposited shall thereupon become a government realization.* Any action to recover payment of taxes under protest shall be commenced in the tax appeal court.
(Emphases added.)

7. HRS § 661–1 (1993) provides in pertinent part:

The several circuit courts of the State ... have original jurisdiction to hear and determine the following matters....
(1) All claims against the State founded upon any statute of the State; or upon any regulation of an executive department; or upon any contract, expressed or implied, with the State....

8. CASI asserted a total of five points of error. However, CASI's fourth and fifth points of error are duplicative of its third and second points of error, respectively. Thus, we need not separately address them.

9. The federal district court lawsuit involved different defendants than in the instant case. CASI noted that an instrumentality of a state (such as DLNR) could not be sued under 42 U.S.C. § 1983 (2000) (allowing for civil suits against "persons" for "deprivation of rights"), which was a statute apparently invoked during the federal litigation. However, since the "ultimate" defendant for both cases, DLNR/State of Hawai'i, is the same for all intents and purposes, we will use the designation "DLNR Defendants" to refer to the defendants in both cases.

*Sailing, Inc. v. Johns,* 195 F.Supp.2d 1157, 1161–63 (D.Haw.2001). Sometime in 1988, the State of Hawai'i designated certain ocean waters off Kauai's Na Pali Coast as an "ocean recreation management area" (hereinafter "ORMA"). *Id.* at 1162. The Hawai'i Administrative Rules ("HAR") promulgated by DLNR provided, *inter alia,* that commercial motorboats operating within an ORMA were required to have a "commercial operating use permit" and be assessed a "use fee" of $75 per month or 2% of monthly gross receipts, whichever is greater. *See* HAR § 11–256–11(a)(3) (1994).[10] *Hula Kai* was to operate within the Na Pali Coast ORMA, and so CASI applied for and was issued a commercial operating use permit ("ORMA permit") for the craft in July 2000. *Captain Andy's,* 195 F.Supp.2d at 1163. CASI was reissued an ORMA permit for the *Hula Kai* on July 20, 2001, effective for one year from its issue date. *Id.* at 1164.

CASI took umbrage with the 2% ORMA permit use fee, ostensibly because CASI was already paying the State of Hawai'i a different commercial use fee (1.85% of the *Hula Kai's* gross revenues), to the Hawai'i Department of Transportation. For this and other reasons, CASI filed a complaint against DLNR in federal district court on January 20, 2000, seeking to, *inter alia,* have the ORMA permit fees assessed against the *Hula Kai* declared an impermissible duty of tonnage in violation of article I, section 10, clause 3 of the United States Constitution, which provides that "[n]o State shall, without the Consent of Congress, lay any Duty of Tonnage ... in time of Peace[.]" *See Captain Andy's,* 195 F.Supp.2d at 1172. CASI continued to pay the required ORMA permit fees during the pendency of the federal litigation, because failure to pay would result in automatic revocation of the permit. *See* HAR § 13–256–11(b) (1994) ("Delinquency in the payment of any fees owed to the depart-

ment will result in automatic revocation of the [ORMA permit][ ]").

The language of the *Hula Kai* ORMA permit issued on July 21, 2000 reads in pertinent part:

I agree to the following terms, conditions and charges:

1. The permitee agrees to abide by all Hawai'i Administrative Rules for Small Boat Harbors and the waters of the State promulgated by [DLNR], for [in the event of] any violations of the provisions of the aforementioned rules, in addition to any fines or penalties a court of law may impose, this permit to operate a vessel commercially on the **NA PALI COAST OCEAN WATERS** may be revoked.

. . . .

5. The charge for this commercial permit will be the ORMA fee of $ *75.00* per month, or *2* % of the vessel's gross receipts, whichever is the greater.

6. The ORMA use charge of $*75.00* is due and payable in advance on the first day of the month in the [DLNR's] Division of Boating and Ocean Recreation office. Not later than 30 days following the end of the month, the permitee shall submit to the Division of Boating and Ocean Recreation a report of gross receipts for the month. . . . Unless paid on time, this permit **WILL AUTO-MATICALLY EXPIRE.**

7. This commercial permit may be terminated by [DLNR] by written order of its representative for proper cause and the said vessel will cease commercial operations on the **NA PALI COAST OCEAN WATERS.**

. . . .

11. The permit charges are for the [DLNR's] cost of regulating the privilege of operating this commercial vessel on the **NA PALI COAST OCEAN**

---

**10.** HAR § 13–256–11(a)(3) provides in pertinent part:

> Fees required to be paid to the [DLNR] are as follows:
> (3) Commercial operating area use permit fee. A monthly commercial use permit fee shall be the greater of $75.00 per month, payable in advance, or 2% of the monthly gross receipts. The report of gross receipts shall be submitted to and received by the department not later than the end of the month following the month covered by the report and shall be submitted on a form acceptable to the department.

*WATERS* in the manner stated above. Any other use of harbor property and services must be requested and approved separately.

12. The permit shall not exceed one (1) year from *JULY 20, 2000*

. . . .

. . . .

15. The permitee understand[s] that the captain(s) of said vessel shall be a representative of said company and that they shall have the knowledge of all ORMA rules and regulations.

(Emphases and underlining in original.) (Some emphases formatting altered.) When CASI renewed its permit for the *Hula Kai* for the following year, it was issued a permit with identical language, except that the words "NA PALI COAST OCEAN WATERS" were replaced with "THE [ORMA] OF KAUAI."

The federal district court case eventually proceeded to a trial on the merits. In connection with the ORMA permit fee issue, the federal district court found that (1) the ORMA permit fee had no relationship to any supposed service offered for the "readily perceptible" benefit of commercial vessels in the Na Pali Coast ORMA, (2) "[t]he record is bereft of any evidence corroborating the existence of any regulatory scheme specific to the Na Pali Coast [ORMA]," and (3) "there is a complete absence of accounting for any costs specifically allocable to the Na Pali Coast [ORMA], including those alleged to relate specifically to regulating and/or preserving those waters[.]" *Captain Andy's,* 195 F.Supp.2d at 1173–74 (citations omitted). The federal district court concluded that (1) "[t]he ORMA [permit] [f]ee appears ... to be a revenue measure that is used to recoup the costs of a statewide boating program whose many components are not limited to commercial navigation within the Na Pali Coast ocean waters[,]" such that (2) "[b]ased on the overwhelming evidence, the [c]ourt finds [DLNR's] assessment of a [2% ORMA permit fee] against the 'Hula Kai' to be an

impermissible tax in violation of the prohibition against tonnage duties." *Id.* at 1174 (footnote omitted).

The State of Hawai'i did not appeal the federal district court's December 28, 2001 ruling, and did not thereafter assess the ORMA permit fee against the *Hula Kai.* However, the State of Hawai'i refused to refund any of the $40,882.52 in ORMA permit fees that it had collected until the time of ruling, despite demand from CASI. The instant state court proceedings ensued.

## C. State Circuit Court Proceedings

### 1. *CASI's complaint*

On April 17, 2002, CASI brought a "complaint for declaratory and monetary relief" against the DLNR Defendants in circuit court. (Capitalization omitted.) Specific jurisdiction was claimed under HRS § 662-3 (1993).[11] CASI sought recovery of, or, in the alternative, future setoff of, DLNR usage fees in the amount of the $40,882.52 in *Hula Kai* ORMA permit fees paid to DLNR. CASI additionally made the following allegations:

29. At all times relevant hereto, [the DLNR] Defendants and their predecessors in office were unwilling to allow CASI to pay under protest or segregate the disputed use payments, or allow the payments to be deposited with the clerk of the court in [federal district court action] pending a final determination of the constitutionality of the [ORMA permit fee].

30. [The DLNR] Defendants and their predecessors intentionally and knowingly took this position despite asserting the position in the [federal district court action] that the Eleventh Amendment to the United States [Constitution] barred the federal court from ordering the state to refund to CASI the amount of the wrongful assessment, citing *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

37. When [DLNR] refused to reconsider its assessment of the ORMA [permit] [f]ees, CASI requested a contested case

---

11. HRS § 662-3 provides in pertinent part:
The circuit courts of the State and, except as otherwise provided by statute or rule, the state district courts shall have original jurisdiction of all tort actions on claims against the State for money damages, accruing on and after July 1, 1957, for injury or loss of property....

hearing pursuant to H.R.S. Chapter 91, which request [the DLNR] Defendants denied.

As to paragraph 30 of CASI's complaint, the DLNR Defendants admitted that the eleventh amendment to the United States Constitution precluded an award of money damages against the State of Hawai'i in federal court.

CASI asserted a total of seven claims in its complaint: (1) "lack of authority" for the DLNR Defendants to assess the ORMA permit fees under HRS § 200–10(c)(4) (1993),[12] (2) "unlawful withholding" of the ORMA permit fees by the "individual" DLNR Defendants despite demand for their return, (3) wrongful conversion of the ORMA permit fees such that defendant Mason Young, acting administrator of the DLNR subdivision that assessed the fees, was personally liable, (4) "unjust enrichment and equitable restitution," (5) "bad faith and unfair dealing" such that Mason Young (on this alternative basis) was personally liable to repay the ORMA permit fees to CASI, (6) "malicious misconduct" by Mason Young and co-defendant David Parsons (a DLNR ocean subdivision administrator) rendering both jointly and severally liable to CASI, and (7) in the alternative, future DLNR fee setoff for CASI in the amount of the *Hula Kai* ORMA permit fees. (Some capitalization omitted.)

2. *Cross-motions for judgment on the pleadings/summary judgment* [13]

The DLNR Defendants filed their answer to CASI's complaint on May 20, 2002. On June 19, 2002, approximately one month later, the DLNR Defendants filed a motion for judgment on the pleadings, or, in the alternative, for summary judgment against CASI on all claims (hereinafter "motion for summary judgment"). As relates to the instant appeal, the DLNR Defendants argued that (1) as per *Figueroa v. State,* 61 Haw. 369, 383–84, 604 P.2d 1198, 1206–07 (1979), the State of Hawai'i was immune from all tort claims asserted under HRS § 662–3 for recovery of money damages due to constitutional violations, and (2) in any event, CASI's claims, were specifically barred under HRS § 662–15(1) and (2),[14] because (a) the DLNR Defendants were merely following "existing administrative rules," and (b) the federal court found the ORMA permit fee to be a "tax."

On July 5, 2002, CASI filed a cross-motion for summary judgment, asserting, in relevant part, that (1) the ORMA permit for the *Hula Kai* was, or in the alternative was tantamount to, an express contract between the DLNR Defendants and CASI, with an "implied promise of refund" in the event the contract was illegal and void,[15] arising from a contracting party's duty of good faith and fair dealing; and (2) the DLNR defendants owed CASI a "duty of restitution" arising from their "tortious conver[sion]" of the ORMA permit fees. (Emphases omitted.) CASI argued that the State of Hawaii's sovereign immunity to suit was waived on account of both HRS § 662–2 (1993)[16] as to

12. HRS § 200–10(c)(4) (1993) reads, in pertinent part:
If a vessel is used for commercial purposes from its permitted mooring, the permittee shall pay, in lieu of the moorage and liveaboard fee, a fee based on a percentage of the gross revenues derived from the use of the vessel....

13. Insofar as the issues of defendant Mason Young's personal liability for alleged conversion, bad faith and unfair dealing do not appear to be raised by CASI for consideration in this appeal, they are deemed waived in this appeal. *See supra* note 4.

14. HRS § 662–15(1) and (2) provide in pertinent part:
This chapter shall not apply to:
(1) Any claim based upon an act or omission of an employee of the State, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation is valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state officer or employee, whether or not the discretion involved has been abused;
(2) Any claim arising in respect of the assessment or collection of any tax....

15. In its cross-motion for summary judgment, CASI essentially took the position that the contract was not "severable" in any form, such that the federal district court's ruling on the ORMA permit fees also rendered the ORMA permit (*i.e.*, an express contract) entirely void and unenforceable.

16. HRS § 662–2 provides as follows:
The State hereby waives its immunity for liability for the torts of its employees and shall be

tort claims, and HRS § 661-1 (1993) as to contract claims.[17] This was the first time that CASI had raised the specter of a contract claim and invoked HRS chapter 661 as a basis for jurisdiction.

On July 17, 2002, CASI filed its opposition to the DLNR Defendants' motion for summary judgment. CASI, *inter alia,* reiterated its July 5, 2002 position on cross-motion for summary judgment, albeit more explicitly this time, that "CASI's claims sound in tort *and* contract." (Emphasis added.)

The DLNR Defendants also filed their opposition to CASI's cross-motion for summary judgment on July 17, 2002, in which they pertinently argued as follows: (1) "applying [HRS § 40-35] to [CASI's] situation, the [ORMA permit fees] refund issue is moot because the thirty-day [statute of limitations] passed long ago and the circuit court lacks jurisdiction over the matter (the tax appeal court has jurisdiction)[ ]" (while noting in a following footnote that HRS § 662-15(3) "bars [CASI's] tort claims" on account of this alternate remedy at law); (2) there was "absolutely no hint in any ORMA permit of an implied promise that [CASI] would be given a refund if the [ORMA permit fee] assessment was subsequently determined to be unconstitutional[;]" (3) the ORMA permit was a valid contract; and (4) CASI's conversion claim must fail because the ORMA permit fees paid by CASI "were never segregated or kept as an intact fund for [CASI] and the fees were never intended to be returned to [CASI][.]" This was the first time that the DLNR Defendants had raised HRS § 662-15(3) and the HRS § 40-35 claim and statute of limitations as a bar to circuit court jurisdiction and CASI's claims in general, but no objection was made by CASI.

CASI and the DLNR Defendants filed their replies to the oppositions to the cross-motions on July 22, 2002. CASI noted in its reply that (1) the ORMA permit fees were not taxes and DLNR had no constitutional authority to impose any form of taxes, (2) contrary to the DLNR Defendants' assertions, the ORMA permit was an express contract, (3) CASI was actually in compliance with HRS § 40-35 insofar as it effectively "paid under protest" and properly and timely initiated suit in "a court of competent jurisdiction," namely federal district court, on January 2000, or roughly six months prior to the initial issuance of the ORMA permit on July 2000,[18] (4) in any event, the ORMA permit fees are not recoverable under HRS § 40-35 because they do not constitute taxes, and (5) principles of equity require the DLNR Defendants to refund the ORMA permit fees on account of the DLNR Defendants' failure to comply with HRS § 40-35 and deposit the disputed fees into a "litigated claims fund" pending the outcome of the federal litigation.

The DLNR Defendants asserted in their reply, *inter alia,* that: (1) the circuit court should disregard CASI's contract claims and assertion of HRS § 661-1 as a basis for jurisdiction inasmuch as neither was raised within CASI's complaint, and (2) in any event, CASI "has not pled that any express contract requires [the State of Hawai'i] to provide a refund if the fee assessment was subsequently deemed unconstitutional[.]"

Hearing on the cross-motions was held on July 25, 2002, and the circuit court granted summary judgment in favor of the DLNR Defendants. It orally ruled as follows:

I am persuaded that the State has the better argument that when the theory that you use that was ultimately successful is,

(1) All claims against the State founded upon ... any contract, expressed or implied, with the State....

---

liable in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

**17.** HRS § 661-1 provides in pertinent part:
The several circuit courts of the State and, except as otherwise provided by statute or rule, the several state district courts shall, subject to appeal as provided by law, have original jurisdiction to hear and determine the following matters....

**18.** By "payment under protest," CASI appears to mean that the mere act of its payment of the ORMA permit fee during the pendency of the federal district court litigation constituted some sort of "continuing protest."

that this was an impermissible tax or a fee or whatever you want to call it that was prohibited because of the constitutional prohibition against tonnage duties; then you are required to use the concomitant remedy for obtaining relief against taxes, be they higher than they're suppose[d] to be or unconstitutional, and that would be the statute, HRS Section 40-35.

.... there was nothing, so far as I can tell, to prevent [CASI from] having filed under [HRS § ] 40-35 and having the matter go to Tax Court and having litigated it there, although on [an] additional second track [ (sic) ] and, perhaps, having stayed it until the [federal district court] decided whatever they did.

So my best judgment is, it's not that there's no remedy, but the remedy that is available had to have been timely invoked. Apparently, the requirements of HRS Section 40-35 were not met; and therefore the Court grants [the DLNR Defendants'] motion

....

The circuit court's August 28, 2002 order granting summary judgment in favor of the DLNR Defendants read in pertinent part:

With respect to [CASI's] claims against [the DLNR Defendants] .... such claims are barred by [HRS] § 662-15(3) .... because [CASI] has a remedy provided by state law, specifically [HRS] § 40-35[.] [CASI] is not foreclosed from bringing an action under [HRS] § 40-35 .... but the [c]ourt does not address whether the time has passed to bring such an action.

The circuit court's final judgment was entered on September 13, 2002, and CASI timely appealed on October 7, 2002.

## II. STANDARDS OF REVIEW

### A. Summary Judgment

 With respect to review of summary judgment, this court has recently stated:

"We review the circuit court's grant or denial of summary judgment de novo." *Yamagata v. State Farm Mut. Auto. Ins. Co.*, 107 Hawai'i 227, 229, 112 P.3d 713, 715 (2005) (citing *Hawai'i Cmty. Fed. Credit Union v. Keka*, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000)). The standard for granting a motion for summary judgment is well established:

[S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Querubin v. Thronas,* 107 Hawai'i 48, 56, 109 P.3d 689, 697 (2005) (citations omitted) (brackets in original).

*Orthopedic Assocs. of Hawai'i, Inc. v. Hawaiian Ins. & Guar. Co., Ltd.,* 109 Hawai'i 185, 194, 124 P.3d 930, 939 (2005).

Given that the DLNR Defendants' motion for judgment on the pleadings, or, in the alternative, for summary judgment contained three exhibits, including the federal district court's findings of fact, conclusions of law and order in *Captain Andy's Sailing, Inc. v. Johns,* and also given a variety of other matters outside the pleadings submitted to (and not excluded by) the court, the DLNR Defendants' motion is one for summary judgment, such that this standard of review governs. *See* Hawai'i Rules of Civil Procedure ("HRCP") Rule 12(c) (2000).[19]

---

**19.** HRCP Rule 12(c) provides in pertinent part: After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56....

**192**

## B. Jurisdiction

■ This court has previously stated that "[t]he existence of jurisdiction is a question of law that we review de novo under the right/wrong standard." *Lester v. Rapp*, 85 Hawai'i 238, 241, 942 P.2d 502, 505 (1997) (citation omitted).

## III. DISCUSSION

■ We initially note our agreement with CASI that the ORMA permit fees at issue, which were collected by DLNR, were just that—fees, rather than taxes of any kind. However, the circuit court nonetheless properly held, albeit for the wrong reasons,[20] that it was divested of jurisdiction because of CASI's failure to seek relief under HRS § 40–35, because the statute encompasses the ORMA permit fees at issue as well as taxes.

## A. HRS § 40–35

■ As noted *supra*, HRS § 40–35 provides in pertinent part:

(a) Any disputed portion of moneys representing *a claim in favor of the State* may be paid under protest *to a public accountant of the department, board, bureau, commission, or other agency of the State with which the claimant has the dispute.* The protest shall be in writing, signed by the person making the payment, or by the person's agent, and shall set forth the grounds of protest. If any payment, or any portion of any payment, is made under protest, the public accountant to whom the payment is made shall hold that portion of the moneys paid under protest in a trust account in the state treasury for a period of thirty days from the date of payment.

(b) *Action to recover moneys paid under protest or proceedings to adjust the claim may be commenced by the payer or claimant against the public accountant to whom the payment was made, in a court of competent jurisdiction, within thirty days from the date of payment.* If no suit or proceeding is brought within the thirty-day

period, the money paid under protest shall be deposited into the appropriate account in the treasury of the State by the accountant and the amount deposited shall thereupon become a government realization. *Any action to recover payment of taxes under protest shall be commenced in the tax appeal court.*

(Emphases added.) We initially observe that a payer's ability to make payments under protest "to a public accountant of the department, board, bureau, commission, or other agency of the State with which the claimant has the dispute" encompasses all State of Hawai'i instrumentalities as per the plain language of HRS § 40–35, and not just the Department of Taxation. We also note that, as seen *infra*, the legislative history of HRS § 40–35 makes clear that fees such as the ORMA permit fees are included within the class of payments to the State from which timely protest and lawsuit must be made.

HRS § 40–35 has its origins in the territorial laws of Hawai'i—specifically, Section 1521A of the Revised Laws of Hawai'i, which was enacted in 1907. *See* 1907 Haw. Sess. Laws 52–53. The new statute set up a process by which "[m]oneys representing *a claim in favor of the Territory of Hawai'i* may be paid to a public accountant of the Territory under protest. . . ." *See id.* at 52 (emphasis added). As (1) the term "claim in favor of the Territory of Hawai'i" was not defined either within the statute itself or the surrounding chapter, and (2) this term has remained essentially unchanged up to the present (the statutory language now reads, "claim in favor of the *State* "), we next examine the legislative history of Section 1521A in aid of interpretation. *See 808 Development, LLC v. Murakami*, 111 Hawai'i 349, 355, 145 P.3d 996, 1002 (2006) (citation omitted).

A single standing committee report as to then-Section 1521A was released by the Judiciary Committee of the Senate in 1907, which reads in pertinent part:

[T]he proposed bill under consideration [ (Section 1521A) ] is to provide for a contingency which sometimes occurs and

---

**20.** *See Lee v. Heftel*, 81 Hawai'i 1, 2 n. 2, 911 P.2d 721, 722 n. 2 (1996) (quoting *State v. Propios*, 76 Hawai'i 474, 486, 879 P.2d 1057, 1069 (1994), and *State v. Taniguchi*, 72 Haw. 235, 240, 815 P.2d 24, 26 (1991)).

for which no provision is made. *It sometimes happens that differences of opinion arise between the Treasurer of the Territory and Citizens in regard to the amount which may be due the Government, especially in regard to the amount of fees to be paid under the statutes.* Sometimes the simplest and most direct way to settle such a controversy is for the Citizen to pay the amount claimed under protest and then .... to submit the matter for judicial decision.

When money is paid under protest under such or similar circumstances, there is no provision of law by which the amount may be held by the Treasurer until the case is decided, but under the present statutes it is his duty to turn the money in as a government realization.

The object of the Bill is to meet such cases and provides that the Treasurer may hold the money for thirty days, and if within that time action or proceedings are brought he shall hold the money as a special deposit pending the decision; and if the proceedings or action is not brought within the thirty days, the money shall become a government realization.

Sen. Stand. Comm. Rep. No. 72, in 1907 Senate Journal, at 451–52 (emphasis added). The legislative history makes clear that the term "claim in favor of the Territory of Hawai'i," and by extension the current language "claim in favor of the State," includes precisely the kinds of fees as those assessed by the ORMA permit, inasmuch a "claim" necessarily includes *any* "amount which may be due the Government[.]" *See* 1907 Haw. Sess. Laws 52; HRS § 40–35; Sen. Stand. Comm. Rep. No. 72, in 1907 Senate Journal, at 451–52. Clearly, "amounts which may be due the Government" includes fees, which are specifically mentioned in the legislative history, as well as tax payments. As such, we hold that HRS § 40–35 is the proper avenue for recovery of the ORMA permit fees.

**B. Because an Alternate Remedy at Law was Available to CASI, HRS § 662–15(3) Acted as a Bar to CASI's Tort Claims.**

■ Because we hold that HRS § 40–35 applied to CASI's ORMA permit fee dispute,

we also hold that all of CASI's tort claims are barred under HRS § 662–15(3), which unambiguously provides that HRS chapter 662 (*i.e.*, the State of Hawaii's general waiver of sovereign immunity for tort claims) is inapplicable to "*[a]ny* claim for which a remedy is provided elsewhere in the laws of the State[.]" (Emphasis added.) The circuit court therefore did not err in determining that HRS § 662–15(3) barred all of CASI's tort claims.

**C. HRS § 661–1 is Inapplicable to the Instant Case Because ORMA Permits are Licenses and Not Contracts.**

■ Having determined that CASI's tort claims are barred, we next address the question of whether CASI could assert any contract claims against the DLNR Defendants pursuant to HRS § 661–1. At the hearing on their respective cross-motions for summary judgment, CASI and the DLNR Defendants were in agreement that the ORMA permit constituted an express contract. On appeal, however, the DLNR Defendants assert for the first time that the ORMA permit is a revocable license rather than a contract. The DLNR Defendants, by way of footnote in their answering brief, explain that

[t]he [DLNR Defendants] acknowledge[ ] that [they] previously took the position that the ORMA permit was an express contract.... However, the subject matter jurisdiction question is valid at any stage of the case, and appellate courts have the power to correct errors in jurisdiction. [Citation omitted.] The appellate court is obliged to insure [ (sic) ] that it has subject matter jurisdiction. [Citation omitted.] The lack of subject matter jurisdiction can never be waived by any party at any time. [Citation omitted.]

■ Although the DLNR Defendants' change of legal position is being made at an extremely late stage of this case, we must agree with the DLNR Defendants' assessment of the law. It is axiomatic that "[t]he lack of jurisdiction over the subject matter cannot be waived by the parties." *Application of Rice*, 68 Haw. 334, 335, 713 P.2d 426,

427 (1986) (citation omitted) (internal quotation marks omitted). And even "[i]f the parties do not raise the issue, a court *sua sponte* will, for unless jurisdiction of the court over the subject matter exists, any judgment rendered is invalid." *Id.* (citations omitted) (internal quotation marks omitted). Thus, the question of the existence of jurisdiction "is in order at any stage of the case[.]" *Id.* (citation omitted) (internal quotation marks omitted).

In *Territory v. Fung*, 34 Haw. 52 (1936), the Territorial Court addressed the question of whether a certificate of "public convenience and necessity" for a common carrier of passengers on public highways (namely, the Checker Cab Co. of Hawai'i) was a government franchise (*i.e.*, a contract) or a mere revocable license. *See Territory v. Fung*, 34 Haw. at 53–54. Fung, the trustee for Checker Cab Co., contended that the certificate was the former, while the Territory argued that it was the latter. *Id.* at 60. The Territorial Court set forth the following:

A franchise has been defined as a right, privilege or power of public concern, which ought not to be exercised by private individuals at their mere will and pleasure, but should be reserved for public control and administration, either by the government directly, or by public agents, acting under such conditions and regulations as the government may impose in the public interest, and for the public security. * * * Under our system, their existence and disposal are under the control of the legislative department of the government, and they cannot be assumed or exercised without legislative authority. No private person can establish a public highway, or a public ferry, or railroad, or charge tolls for the use of the same, without authority from the legislature, direct or derived." *California v. Pacific Railroad Co.*, 127 U.S. 1, 40, 8 S.Ct. 1073, 32 L.Ed. 150. A governmental license has been defined as a "temporary permit to do what otherwise would be unlawful." *Public Service Commission, Second Dist. v. Booth*, 170 A.D. 590, 156 N.Y.S. 140, 141; *City of Dallas v. Gill*, 199 S.W. (Tex.) 1144, 1145.

A franchise and a governmental license differ widely in origin and legal characteristics. A franchise is derived from a grant of the sovereign power. The power conferred emanates from, and is a portion of, the power of the government that confers it. A governmental license, not imposed for revenue, has its source in the police power. *A franchise is conceived as a subject of contract; perpetual if not limited or qualified as to duration; a property right; and subject to alienation. A governmental license on the other hand is considered as a mere privilege; is not of itself a contract unless supported by a consideration other than the license fee; is revocable and hence temporary; confers no vested right of property; and being personal to the licensee is not transferable unless otherwise provided* [.]

*See id.* at 60–62 (emphasis added) (some citations omitted) (some internal quotation marks omitted) (some punctuation omitted); *see also Morita v. Public Utilities Commission of the Territory of Hawai'i*, 40 Haw. 579, 589–90 (1954) (citing the franchise/government license distinction in *Fung* ). While not squarely on point, the franchise/license discussion is highly instructive in the instant appeal. In *Fung*, the Territorial Court determined the certificate of public convenience and necessity to be a license, because, *inter alia*, (1) it granted a privilege, (2) it was limited in duration (four years), (3) the public utilities commission was able to revoke the license for cause, (4) the certificate holder was required to strictly comply with its terms and conditions, and (5) the certificate was impliedly nontransferable. *See Fung*, 34 Haw. at 62–63.

Similarly, in the instant case: (1) the ORMA permit charges were only "for the [DLNR's] *cost of regulating* the *privilege* of operating [the *Hula Kai* ] on [the Na Pali Coast ORMA]...." (ORMA Permit Provision No. 11) (emphases added); (2) the permit had a duration of no greater than one year (ORMA Permit Provision No. 12); (3) DLNR specifically reserved the right to "terminate[ ]" the ORMA permit "for proper cause" (ORMA Permit Provisions Nos. 1 and 7); (4) the terms of the ORMA permit required compliance with "all Hawai'i Adminis-

trative Rules for Small Boat Harbors and the waters of the State promulgated by [DLNR][ ]" (ORMA Permit Provision No. 1); and (5) the ORMA permit was impliedly non-transferable, in that (a) it was expressly issued to CASI as to the *Hula Kai*, and (b) it required that any and all captains of the *Hula Kai* be representatives of CASI (ORMA Permit Provision No. 15). Thus, based on the analysis set forth in *Fung*, combined with the lack of any indicia of bargained-for exchange or reciprocal obligations on the part of DLNR, we agree with the DLNR Defendants' position on appeal and hold that the ORMA permit at issue is a revocable license, rather than a contract.

Even if we were to assume *arguendo* that the permit is void *in toto* as being an unconstitutional tax, that does not change the essential nature of the permit as a license. Put differently, the federal district court's finding that the permit was apparently a general revenue measure, given the lack of any DLNR regulation and preservation activities in the Na Pali Coast ORMA, or costs that could be specifically allocated thereto, *see Captain Andy's*, 195 F.Supp.2d at 1173–74, does not transform the permit into a contract.

Because the ORMA permit at issue is a revocable license rather than a contract, we hold that HRS § 661–1 is not a basis for subject matter jurisdiction.

**D. CASI's HRS § 40–35 Claim is Barred by the Statute of Limitations.**

■ We finally address the question of whether CASI may timely bring a claim for relief under HRS § 40–35. Inasmuch as CASI has asserted that it has timely advanced a HRS § 40–35 claim, albeit only once and by way of reply briefing in its cross-motion for summary judgment, we must next determine as to whether CASI has preserved the claim by bringing suit "against

the public accountant to whom the payment was made, in a court of competent jurisdiction, within thirty days from the date of payment." *See* HRS § 40–35(b).

In order for CASI to possibly be entitled to any recovery under HRS § 40–35, it would have to have brought suit in a court of competent jurisdiction within thirty days after its last ORMA permit fee payment. Inasmuch as the record indicates that HRS § 40–35 was never at issue in the federal district court action,[21] the proper inquiry is whether CASI made a proper and timely claim under that statute in state court. As per CASI's complaint, the last ORMA permit fee payment was made on August 2001. However, CASI's state court complaint was not filed until April 17, 2002, and the HRS § 40–35 statute of limitations had expired thirty days after the last payment, *i.e.*, sometime in September 2001. We also note the complete lack of any evidence in the record tending to show that CASI had lodged a written and signed protest with anyone at DLNR, much less with a DLNR public accountant. *See* HRS § 40–35(a). Moreover, CASI does not assert that it would have been impossible to have filed a state court suit under HRS § 40–35 for recovery of the disputed ORMA permit fee payments during the pendency of the federal district court litigation (*e.g.*, on July 2000, when the *Hula Kai* ORMA permit was first issued, or immediately thereafter, when CASI made its first ORMA permit fee payments for the *Hula Kai*). We therefore hold that CASI is time-barred from seeking relief pursuant to HRS § 40–35.

**IV. CONCLUSION**

We are not without sympathy for CASI's plight, inasmuch as (1) there is no contract with the DLNR Defendants in dispute, and (2) an extremely short statute of limitations within an admittedly obscure, near–100-year–old statute has effectively barred all of

---

21. CASI claims that its federal district court lawsuit in January 20, 2000 satisfied the requirements of HRS § 40–35(a), but we find to the contrary. First, as CASI admits, the ORMA permit for the *Hula Kai* was not even obtained until July 2000, about six months after the federal litigation commenced. Second, CASI does not point out any evidence that a written and signed protest had ever been delivered to any of the DLNR defendants, much less a DLNR public accountant, prior to initiating the federal lawsuit. See HRS § 40–35(a). Third, the record is devoid of any indication that HRS § 40–35, a state statute, was ever invoked as a basis for relief in the federal proceeding.

CASI's claims for relief. However, we are constrained to hold that HRS § 40–35 unmistakably governs the instant appeal, and that the DLNR Defendants (and by extension, the State of Hawai'i) cannot be legally compelled to refund the ORMA permit fees, despite the federal district court's explicit and unchallenged finding that such fees were unconstitutionally exacted as applied to the Na Pali Coast ORMA. We must therefore affirm the circuit court's judgment.